MADDOX, Justice
(dissenting).
The sole issue on this appeal is whether the doctrine of federal preemption applies to the plaintiffs claim that he was injured because of the faulty design and manufacture of a mobile home that was certified as meeting all of the requirements of the HUD regulations and requirements. The trial court held that the plaintiffs state law tort claims against the defendant were subject to federal preemption, and it entered a summary judgment in favor of PFS. Because I believe the trial court’s holding was correct, I must respectfully dissent.
The plaintiffs main argument on appeal is that his state tort claim is not preempted, because, he argues, “pre-emption will not lie unless it is the ‘clear and manifest purpose of Congress.’ ”
*66 PFS, on the other hand, argues that the trial court correctly granted its motion for summary judgment on the basis that the plaintiffs claims were preempted by federal law, because, PFS says, “[t]he statutory framework for manufactured housing preempts state or common law rules for liability that are not identical to the federal standard.” PFS contends that in order for Turner to prevail, he must establish that it could or should have exercised its own independent engineering analysis in order to ascertain whether it should require greater braking capacity than was required in the HUD regulations. PFS argues that Turner cannot support his cause of action, because what he argues PFS should have done would conflict with HUD standards that PFS says preempt any state or local rules. PFS argues that this is true even if another design might arguably be safer.
The sections pertinent to this case are 24 C.F.R. § 3280.904(b)(9) and § 3280.903(c). Section 3280.904(b)(9) reads as follows:
“(9) Brake Assemblies, (i) The number, type, size and design of brake assemblies required to assist the towing vehicle in providing effective cohtrol and stopping of the manufactured home shall be determined and documented by engineering analysis. Those alternatives listed in 3280.903(c) may be accepted in place of such an analysis.”
Section 3280.903(c) provides:
“In place of an engineering analysis, either of the following may be accepted: (1) Documented technical data of suitable highway tests which were conducted to simulate transportation loads and conditions; or (2) acceptable documented evidence of actual transportation experience which meets the intent of this subpart.”
The language of the applicable regulation in this case is unambiguous; thus, the expressed intent of Congress must be given effect by the court. See Tuscaloosa County Commission v. Deputy Sheriffs’ Association of Tuscaloosa County, 589 So.2d 687 (Ala.1991). Transportation experience is an acceptable method for Mays to demonstrate to PFS that it is in compliance with the regulation. Mays, according to the regulation, may use its own certification of transportation experience to meet this requirement.
Turner, on appeal from the summary judgment, argues that PFS erroneously relied on a letter from Mays that was not an acceptable document of actual transportation experience. The trial coürt found, however, that Mays had sufficiently certified in a letter that in transporting manufactured housing it had “not experienced latent damage to structural, plumbing, mechanical, or electrical systems that would exceed the 1% maximum allowance in § 280.903 of the standards.”
The trial court stated, “PFS had no responsibility for incorporating any safety device or feature into the axle described in Turner’s complaint because there is no such responsibility defined in the PFS-Mays contract or in the applicable HUD regulations.” PFS argues that “the plaintiff cannot support [his] cause of action against PFS because the Mays Home and the PFS certification of that home to the HUD standards pre-empts any State or local rules in conflict with that regulation” and that “[t]his is true even if another design might arguably be safer,” citing Welsh v. Century Products, Inc., 745 F.Supp. 313, 315 (D.Md.1990). Welsh sets out three circumstances calling for a finding of federal preemption:
“First, the federal statute may, by its terms, explicitly preempt state law. Second, the federal statute may implicitly preempt state law by so pervasively regulating a given subject matter that ‘the intent to occupy [the] ... field to the exclusion of state law’ is apparent. Third, the federal statute may implicitly preempt state law if the state law ‘actually conflicts’ with the federal law.”
The federal statute involved in this case explicitly preempts state law. Section 3282.11, “Preemption and Reciprocity,” part of the Manufactured Home and Procedural and Enforcement Regulations, as codified in 24 C.F.R. 3282, provides in part:
“§ 3282.11 Preemption and Reciprocity
“(a) No state manufactured home standard regarding manufactured home construction and safety which covers aspects of the manufactured home governed by the *67 Federal standards shall be established or continue in effect with respect to manufactured homes subject to the Federal standards and these regulations unless it is identical to the Federal standards.
[[Image here]]
“(e) No State or locality may establish or enforce any rule or regulation or take any action that stands as an-obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act.”[6]
Turner seeks to avoid the force of these provisions by arguing that he has made no claims concerning any state standards regarding manufactured homes, but has grounded his negligence claim on his allegation that PFS’s certification gives rise to a common law tort. He claims, therefore, that his action is not preempted. I find no merit in this argument.
Federal preemption occurs whether the state action is in the form of a statute, an administrative regulation, or a judicial decision based on tort law. In San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959), the Supreme Court stated:
“[Rjegulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States’ salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.”
I believe the trial judge correctly held that the “allegations set forth in the plaintiffs’ complaint attempt to place greater safety requirements upon the PFS inspection and certification process than those imposed under the federal regulations.” Congress explicitly preempted state action to regulate the design and transportation of manufactured homes. The clear and unambiguous language of § 3282.11 prohibits the State’s establishment, by judicial decision or otherwise, of a stricter standard for the transportation of manufactured homes. Thus, Turner’s claims are preempted by federal law.
Based on the foregoing, I believe that the summary judgment in favor of the defendant is due to be affirmed. I must respectfully dissent.

. Section 3282.11 is quoted here as it read at the time of Turner’s accident. Because of amendments made in 1991, paragraph (e) now appears in paragraph (d).